# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-2123

_____

| | | |
|---|---|---|
| Eden Electrical, Ltd., | * | |
| | * | |
| Plaintiff/Appellee, | * | |
| | * | |
| Itzhak Eden; Yehezkel Ida; Aharon Ida; | * | |
| Yocheved Rosenbaum; Michal | * | |
| Rosenbaum; Arieh Rosenbaum Heirs, | * | |
| the wife, daughter and heirs of Arieh | * | |
| Rosenbaum, | * | |
| | * | Appeal from the United States |
| Plaintiffs, | * | District Court for the |
| | * | Northern District of Iowa. |
| v. | * | |
| | * | |
| Amana Company, doing business as | * | |
| Amana Appliances, L.P., | * | |
| | * | |
| Defendant/Appellant, | * | |
| | * | |
| Richard Montross, Individually; Steve | * | |
| Prusha, Individually; Leonard Mason, | * | |
| Individually; Bruce Boyle, Individually, | * | |
| | * | |
| Defendants, | * | |
| _____ | * | |
| | * | |
| United States Chamber of Commerce, | * | |
| | * | |
| Amicus on Behalf of | * | |
| Appellant. | * | |

_____

No. 03-2188
_____

| | |
|---|---|
| Eden Electrical, Ltd., | * |
| | * |
| Plaintiff/Appellant, | * |
| | * |
| Itzhak Eden; Yehezkel Ida; Aharon Ida; | * |
| Yocheved Rosenbaum; Michal | * |
| Rosenbaum; Arieh Rosenbaum Heirs, | * |
| the wife, daughter and heirs of Arieh | * |
| Rosenbaum, | * |
| | * |
| Plaintiffs, | * |
| | * |
| v. | * |
| | * |
| Amana Company, doing business as | * |
| Amana Appliances, L.P., | * |
| | * |
| Defendant/Appellee, | * |
| | * |
| Richard Montross, Individually; Steve | * |
| Prusha, Individually; Leonard Mason, | * |
| Individually; Bruce Boyle, Individually, | * |
| | * |
| Defendants, | * |
| _____ | * |
| | * |
| United States Chamber of Commerce, | * |
| | * |
| Amicus on Behalf of | * |
| Appellee. | * |

_____

Submitted: March 12, 2004
Filed: May 28, 2004
_____

Before WOLLMAN, FAGG, and HANSEN, Circuit Judges.
_____

WOLLMAN, Circuit Judge.

This appeal arises out of a distributorship agreement between Amana Company, L.P., doing business as Amana Appliances, Inc. (Amana) and Eden Electrical, Ltd. (Eden). In return for Eden's purchase of $2.4 million in inventory, Amana agreed to make Eden its exclusive distributor in Israel. Eden brought suit, alleging fraud, after Amana abruptly terminated the agreement seventy-seven days after its signing. The jury returned a verdict in favor of Eden, awarding it $2.1 million in compensatory damages and $17.875 million in punitive damages. Amana appeals, arguing (1) that a number of the district court's[1] jury instructions were improper and (2) that the punitive damages award, although reduced by the district court to $10 million, violates due process and Iowa law. Eden cross-appeals, arguing that the district court erred in reducing the punitive damages award. We affirm.

## I.

At the time of the acts complained of, Eden owned twenty-five appliance stores throughout Israel, at least some of which sold Amana refrigerators, which Eden purchased from Amana's Israeli distributor, Pan El A/Yesh Shem, which was owned and controlled by Leon Adam. As a result of certain legal and financial problems on the part of Adam and Pan El A/Yesh Shem (including a $2.4 million debt another

_____

[1]The Honorable G. Thomas Eisele, United States District Judge for the Eastern District of Arkansas, sitting by designation in the Northern District of Iowa.

Adam-controlled company owed Amana), Amana needed a new distributor for Israel. Adam approached Eden about possibly taking over the Israeli Amana distributorship. After considering the proposal, Eden decided to send a number of representatives to meet with Amana executives in Iowa. Eden's representatives traveled to Iowa, met with Amana executives, signed the distributorship agreement, and delivered to Amana's executives a check for $1.2 million and letter of credit in the same amount. During the negotiations, Amana executives, including a territory manager, the international credit manager, and a vice president, made a variety of assurances to Eden's representatives about Amana's good faith, its hope of having a long-term business relationship with Eden, and its willingness to have a direct business relationship with Eden as its exclusive distributor in Israel.

Seventy-seven days after the agreement was reached and payment was made, Amana terminated the distributorship contract without any explanation. Eden's attempts to make contact with Amana were met with no response. Unbeknownst to Eden, which believed it was embarking on a long-term relationship as Amana's exclusive distributor, Amana had, following the execution of the agreement, continued selling refrigerators to other entities for the Israeli market and had represented to others that it was still looking for a long-term distributor for Israel. Eden eventually brought suit, alleging fraud in the inducement. Following a thirteen-day trial, the jury returned the above-described verdict in favor of Eden.

## II.

We review the district court's jury instructions for abuse of discretion. Brown v. Sandals Resort Intern., 284 F.3d 949, 953 (8th Cir. 2002). Our review is limited to a determination of whether the instructions fairly and accurately present the evidence and law to the jury given the issues in the case. Id. Where a party contends that an improper instruction was given to the jury, reversal is appropriate only where the erroneously given instruction affects substantial rights. Id.

Amana first argues that the district court's fraudulent misrepresentation jury instruction was not supported by the evidence and was legally erroneous because Amana had never represented that it was acting in good faith. This contention rings hollow, however, in light of the testimony of one of Amana's officers that he had expressly told Eden's representatives that Amana would deal with them in good faith. Additionally, Amana complains about the district court's decision to give both a fraudulent misrepresentation instruction as well as a fraudulent nondisclosure charge. Contrary to Amana's contention that the two charges were duplicative, the evidence adduced at trial supported the giving of both instructions. The district court reasonably determined that a jury might find (as it ultimately did) that Amana actively misrepresented its good faith but did not commit the distinct act of failing to communicate other information it was obliged to disclose.

Amana next argues that the district court erred in instructing the jury about how the actions of Amana's agents could be imputed to it to form the basis of its fraud. Specifically, Amana argues that the conduct of its agents Prusha, Mason, and Boyle should not have been considered because the individual fraud claims against them had been dismissed at summary judgment. Amana cites no case for the proposition that a corporation's fraud must be committed entirely by a single agent. It is simply not necessary that the entire scheme of fraud be perpetrated by a particular individual. Rather, it is the actions of the corporation as a whole, executed by its agents individually or collectively, that must satisfy the essential elements of the fraud claim. Accordingly, we find no error in the court's instruction.

## III.

We review de novo the district court's determination regarding the constitutionality of a punitive damages award. Ross v. Kansas City Power & Light, Co., 293 F.3d 1041, 1048 (8th Cir. 2002). Because the Iowa Supreme Court's opinions track the United States Supreme Court's due process holdings, see, e.g., Wilson v. IBP, Inc., 558 N.W.2d 132, 147 (Iowa 1996), the same analysis is utilized

in examining the legality of the punitive damage award under both federal and state due process principles.  Id.

The United States Supreme Court has held that we must look to three factors in determining whether a punitive damages award is so grossly excessive as to violate due process: the reprehensibility of the conduct complained of, the disparity between the harm or potential harm suffered by the plaintiff and the punitive damages award (often expressed as a ratio), and the difference between the punitive damages award and the civil or criminal penalties authorized or imposed in comparable cases.  BMW of N. Am., Inc. v. Gore, 517 U.S. 559, 575 (1996).  Because the most important of these factors is the reprehensibility of the defendant's conduct, id., the Supreme Court has elaborated on several factors relating to the wrongfulness of the defendant's conduct: whether "the harm caused was physical as opposed to economic; the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others; the target of the conduct had financial vulnerability; the conduct involved repeated actions or was an isolated incident; and the harm was the result of intentional malice, trickery, or deceit, or mere accident."  State Farm Mut. Auto. Ins. Co. v. Campbell, 538 U.S. 408, 419 (2003).

Having reviewed the record, we agree with the district court that a punitive damages award of $10 million under these facts comports with due process and Iowa law.  In conducting its due process analysis, the district court stated that "the Court can hardly think of a more reprehensible case of business fraud.  Because of Amana's 'intentional malice, trickery, [and] deceit,' this case certainly falls at the high end of reprehensibility in the economic harm category of punitive action claims."  D. Ct. Order of April 21, 2003 (footnote omitted).  Amana's conduct was not accidental or inadvertent.  The scheme to defraud Eden involved various members of Amana's leadership team, including a vice president, the international credit manager, and a territory manager.  Leon Adam testified that he had numerous conversations with Amana's vice president Montross about the "Eden project," "the only purpose of

which was to get rid of the [$2.4 million worth of] inventory which commonly we called . . . junk." Amana's leadership directed Adam to find someone in Israel "who can take the junk." He was instructed to offer the exclusive distributorship as a way of selling "the junk" to someone who had the requisite cash available. Upon receiving this request from Amana, Adam identified and contacted Eden. Amana's actions were purposefully designed to maliciously victimize another company, all the while giving Eden the impression that it was entering into a long-lasting and mutually profitable relationship. Amana entered into the agreement with Eden, then ignored all communications from Eden (including an attempt to place additional orders for Amana appliances) and failed even to deliver to Eden the $2.4 million worth of inventory it had purchased. Eden's was the briefest exclusive distributorship in Amana's history. Even after Eden received the faxed two-page termination letter, Amana refused to discuss the situation.

Given the egregious nature of Amana's conduct and our affirmance of awards with similar compensatory-to-punitive damages ratios in other non-personal injury cases, we conclude that the $10 million punitive damage award is appropriate. See, e.g., State Farm, 538 U.S. at 419-20, 423 (stating that punitive damages at or near the level of compensatory damages appropriate even in the absence of evidence of repeated conduct or reprehensibility); Morse v. Southern Union Co., 174 F.3d 917 (8th Cir. 1999) (affirming punitive damage award in age discrimination case where ratio was greater than 4:1 where upper management was involved in the discrimination scheme). We acknowledge that Eden's compensatory damage recovery was significant and that this is a commercial case. But as has been noted, this was an extraordinarily reprehensible scheme to defraud. Amana's agents expressed the desire to "f***" and "kill" Eden after taking its $2.4 million. Amana's own agent characterized its actions as "extreme." Accordingly, we conclude that the ratio of slightly more than 4.5:1 does not offend due process and that the award appropriately futhers the state's twin goals of punishment and deterrence. State Farm, 538 U.S. at 416.

Amana argues that the punitive damages award should be set aside because the jury considered conduct that occurred outside of Iowa: specifically, that Adam approached Eden in Israel and some of the resulting negotiations occurred there. We are not persuaded by this argument. The jury found that Amana committed fraud through its agents, including Adam. The record shows that Amana's leadership was located in Iowa, met with representatives of Eden in Iowa, took Eden's $2.4 million payment in Iowa, and in Iowa made the decision to fraudulently enter into and then terminate the distributorship agreement. Adam's actions in Israel were certainly in furtherance of the fraudulent scheme, so his conduct is closely related to Eden's harm. State Farm, 538 U.S. at 422-23. Additionally, there is no indication that Amana's conduct was lawful under Israeli law. Id. at 421.

In sum, then, we find no constitutional impediment to the enforcement of the punitive damage award as ultimately determined by the district court.

Eden argues in its cross-appeal that the district court erred in reducing the punitive damage award. We disagree. Granted that Amana was guilty of malice, trickery, and deceit, this is a case of economic rather than physical harm. Amana's conduct did not evince a disregard for the health or welfare of others, and the fraud involved only a single incident and a single victim. See Gore, 517 U.S. at 576-77. Given the constitutional constraints imposed by the Supreme Court's holdings in Gore and State Farm, we agree with the district court that a punitive damage award greater than $10 million would run afoul of the due process principles set forth in those cases.

The judgment is affirmed.

_____